JOHN WHITE *et al.*

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

1. PRESUMPTION—*in favor of regularity of judicial proceedings.* Where the record in a case shows an adjournment of the circuit court, during the September term, to a certain day in November, and the next entry appears to be made on the 1st day of December, which the record states is one of the days of the September term, the presumption is, the court was duly convened on the day in November to which it was adjourned, and that

the term was continued by regular adjournments, or that in the absence of the judge the regular adjournments were made by the sheriff as provided by statute.

2. GRAND JURY—*when venire for special should issue.* Where the record shows merely that the grand jury has been discharged, it will be presumed that it was properly discharged, and in such case, where it turns out that there is some new matter which calls for the action of a grand jury, it is proper to issue a *venire* for a special grand jury.

3. CRIMINAL LAW—*death penalty.* It is error to order the death penalty to be executed before the 10th day of the term of the Supreme Court occurring (in either of the grand divisions) next after pronouncing judgment.

4. SAME—*merely consenting to the commission of a crime does not make a party a principal.* It is error to instruct the jury that one who stands by when a crime is committed, and *consents* to the perpetration of the crime, is a principal in the offense and must be punished as such.

5. ACCESSORY *after the fact.* Where two parties are alone present at the time of the killing of another, and but one does the killing, and the other does not aid, abet or assist in the killing, but afterwards they both with guilty knowledge conceal the fact of the crime, the one not participating in the crime is only guilty as an accessory after the fact, and is not guilty of murder.

6. SAME—*accessory before the fact.* An instruction that an accessory before the fact is one who, being present at the time of the commission of a crime, aids in concealing the party who actually commits the same, or aids in concealing evidence of guilt as to the one actually committing such crime, and is equally guilty with the principal, is erroneous, in ignoring the idea that he may, at the time the crime was committed, have done all he could to prevent its perpetration, though afterwards he may have concealed the knowledge and evidence thereof.

7. SEPARATE TRIALS—*where several indicted.* Where two were indicted for murder, and both parties tried by the same jury, it appeared that many portions of the evidence competent as against one, from the peculiar circumstances surrounding the case were not competent against the other, and still, in effect, very damaging to the party against whom such testimony was not competent. It was *held*, the defendants should be given separate trials.

WRIT OF ERROR to the Circuit Court of Champaign county; the Hon. JAMES C. ALLEN, Judge, presiding.

Mr. L. GORDON, for plaintiff in error William Cozens.

Messrs. SOMMERS & WRIGHT, and Mr. J. W. LANGLEY, for plaintiff in error John White.

Mr. JAMES K. EDSALL, Attorney General, for the People.

Mr. Justice Dickey delivered the opinion of the Court:

At a special term of the circuit court of the county of Champaign, begun January 4, 1875, the Hon. James C. Allen, circuit judge of the 21st circuit, presiding, the plaintiffs in error were tried and convicted of the murder of Wm. Harris. The indictment purports to have been found at the September term, 1874. The verdict was rendered on January 20, and sentence pronounced on the 22d of January, 1875, condemning each of the plaintiffs in error to be hanged on February 12, 1875. This writ brings to this court, for review, this judgment, and the proceedings of record on which it rests.

Champaign county is part of the 16th judicial circuit, of which the Hon. C. B. Smith was the circuit judge. On the 7th of November, 1874, being one of the days of the September term for that year, Judge Smith presiding, an order was entered appointing a special term, to begin on the 4th day of January, 1875.

Afterwards, on the 12th day of November, 1874, Judge Smith still presiding, an order was entered adjourning the court until the 24th day of November, 1874. This order recites that the Hon. Lyman Lacey, judge of the 17th judicial circuit, had, at the request of Judge Smith, consented to preside at the continuation of the term.

The next entry shown in the transcript is of proceedings had on the 1st day of December, 1874. The order states that, on that day, "being one of the days of the term of court aforesaid," Judge Lyman Lacey presiding, it being after the discharge of the regular grand jury, "it being made to appear to the court that public justice required the impaneling of a grand jury, and the court being of the opinion that public justice required the impaneling of a special grand jury at this term, the court, therefore, orders that a special *venire* be issued," etc., "for a grand jury of twenty-three good and lawful men, qualified according to law, and to be summoned," etc.

The *venire* was issued, and the grand jury brought in on this

*venire* was duly organized, and, on the 4th day of January, duly returned the indictment in this case.

It is insisted, because the record does not affirmatively show that the court was convened on the *twenty-fourth* day of November, in pursuance of the order of adjournment to that day, entered on the 12th of November, that it must be held that the September term had lapsed and ceased, and, as a consequence, the proceedings on the 1st day of December (and on the subsequent days purporting to be of the said September term) were *coram non judice* and void, and hence that this indictment was and is void. This position is not well taken. The orders of record of December 1, speaking of the day, states that was one of the regular days of said September term. In the absence of anything in the record to the contrary, by bill of exceptions or otherwise, the fair inference is that the court was duly convened on the 24th of November, and that the term was continued by regular adjournments, or that in the absence of the judge the proper adjournments were made by the sheriff, as provided by sec. 37, chap. 37, R. L. 1874, p. 331.

It is objected that it was irregular and erroneous to issue a *venire* for a grand jury as this was done, and it is suggested the regular grand jury, which had been discharged, ought to have been called together. The course here pursued is expressly authorized by sec. 19, chap. 78, R. S. 1874, p. 634. Where the transcript shows merely that the regular grand jury has been discharged, the court will presume that it was properly discharged, and in such case, where it turns out that there is some new matter which calls for a special grand jury, the case falls within the provisions of this statute. On the face of this record, this grand jury was properly called, and had full authority by law to find the indictment.

The sentence and judgment in this case, however, was erroneous, and must be reversed. Section 439 of the Criminal Code (R. S. 1874, 412) provides that the day set for the execution of the death penalty shall not occur before the 10th day of the term of the Supreme Court occurring (in either of the

grand divisions) next after the pronouncing of the judgment. This judgment was pronounced on the 22d day of January, 1875. The day set for the execution was the 12th day of February, 1875. This was before the 10th day of the next term of the Supreme Court, and was expressly forbidden by the statute.

If this were the only error in this record the case might be remanded for a proper judgment upon the verdict, but we find fatal error in the instructions given to the jury upon the trial, which demands that the verdict also be set aside.

By the second instruction the jury are told that one who stands by when a crime is committed in his presence by another, and *consents* to the perpetration of the crime, is a principal in the offense, and must be punished as such. The law is, that one who "stands by and aids, abets or assists * * * the perpetration of the crime" is an accessory, and "shall be considered as principal," etc. (R. S. 1874, p. 393, sec. 274.)

There is a plain distinction between "*consenting*" to a crime and "aiding, abetting or assisting" in its perpetration. Aiding, abetting, or assisting, are affirmative in their character. Consenting may be a mere negative acquiescence, not in any way made known at the time to the principal malefactor. Such consenting, though involving moral turpitude, does not come up to the meaning of the words of the statute. The words of the statute are stronger than those of the instruction.

By the third instruction the jury are told that if "both defendants were alone present at the killing of Wm. Harris, and that they both had and used deceased's gun thereafter, upon an understanding between them to that effect, and kept and concealed the same," (the gun) "and that they mutually concealed the fact of the crime, * * * the jury *ought* to find defendants *guilty*."

This instruction is wrong. The theory of White's defense was, that he and Cozens were alone present at the killing, (but that he did not kill Harris, nor aid, assist or abet the killing,) and that after that time he and Cozens did have and use the

22—81st ILL.

gun, and this upon an understanding to that effect; and that they both, with guilty knowledge, did conceal the fact of the crime. If that theory were true, White's crime was merely that of accessory after the offense, and not murder. Yet the court say, in substance, that in such case the jury ought to find them both guilty of murder.

The theory of Cozens was very like that of White. Cozens contended that White committed the murder, and he was merely an innocent witness, and was merely guilty of concealing White's crime. He has the same right to complain of this instruction.

The eighth instruction is erroneous. The court therein told the jury "that an accessory *before the fact,* is one who \* \* \* being present at the time of commission of such crime, aids in concealing the party or parties who actually commits the same, or aids in concealing the evidence of guilt as to those actually committing such crime; and the law makes such accomplice a principal to such crime, and alike guilty with those actually committing the same."

All this might be true, and yet the party so being present may have actually made heroic efforts to prevent the perpetration of the crime, though, afterwards, from unworthy motives, he may have concealed the knowledge and evidence of the crime.

The plaintiffs in error respectively raise many questions relating to the competency of different parts of the evidence. These questions arise chiefly from the fact that both parties were tried by the same jury, and many portions of the evidence competent as against one, were not competent as against the other; and still, in effect, very damaging to the party against whom such testimony was not competent. In such case it is very difficult for a juror to divest himself, under instructions, from the illegitimate effect of such evidence upon the party who ought not to be affected thereby.

In view of the judgment this court is about to enter, it is unnecessary to discuss these questions. This is a case wherein

it is eminently fit that these plaintiffs in error should have separate trials.

The judgment of the circuit court is reversed, the verdict set aside, and the case remanded to the circuit court for further proceedings, with directions to give the parties charged separate trials.

*Judgment reversed.*