THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KENNETH DWAYNE TERRY, Defendant-Appellant.—THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RAY CHARLES TERRY, Defendant-Appellant.

Fourth District   Nos. 4—84—0570, 4—84—0571 cons.

Opinion filed June 10, 1985.

Daniel D. Yuhas and Jane Raley, both of State Appellate Defender's Office, of Springfield, for appellants.

Thomas J. Difanis, State's Attorney, of Urbana (Robert J. Biderman and Gwendolyn Klingler, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

PRESIDING JUSTICE GREEN delivered the opinion of the court:

After a trial by jury in the circuit court of Champaign County,

defendants, Kenneth Dwayne Terry and Ray Charles Terry, were convicted of (1) the aggravated battery (Ill. Rev. Stat. 1983, ch. 38, par. 12—4(b)(1)) of Leroy Carter, and (2) the unlawful restraint (Ill. Rev. Stat. 1983, ch. 38, par. 10—3) of Ronald Lindsey. Defendants were both subsequently sentenced to concurrent terms of three years' imprisonment for each offense. We have consolidated defendants' appeals from their sentences and convictions. Each contended that: (1) The court erred in giving the so-called *Hill* instruction; (2) the armed violence convictions were invalid, because they were based on aggravated battery by use of a deadly weapon, an offense which cannot be the predicate offense for an armed violence charge; and (3) the severity of the sentences was a breach of the trial court's discretion. We affirm.

Defendants' most serious claim of error is that the giving of the *Hill* instruction was reversible error. Defendants' guilt of aggravated battery here arises, if at all, from their accountability for the conduct of others. The *Hill* instruction concerns accountability. As it was phrased here, it stated:

"If the jury finds that a defendant voluntarily attached himself to a group bent on illegal acts with knowledge of its design, then the jury may infer that he shared a common purpose with that group."

As the name given the instruction implies, it had its origin in the case of *People v. Hill* (1968), 39 Ill. 2d 125, 233 N.E.2d 367, where the court held that the giving of the instruction was proper there even though the jury had also been given an instruction defining accountability in the language of the statute. Ill. Rev. Stat. 1965, ch. 38, par. 5—2(c).

The *Hill* case was decided shortly before the adoption of Illinois Pattern Jury Instructions (IPI), Criminal (2d ed. 1981). Subsequently, in *People v. Poll* (1979), 74 Ill. App. 3d 534, 393 N.E.2d 732, and *People v. Hunter* (1978), 61 Ill. App. 3d 588, 376 N.E.2d 1065, we recognized that the inference was proper and that the giving of the instruction did not require reversal. We stated, however, that the better practice would be to merely give IPI Criminal 2d No. 5.03, which defines accountability in the language of the statute. We concluded that the format of IPI Criminal had changed the policy of the *Hill* decision and discouraged elaboration upon various ways in which the elements of accountability might be proved. In *People v. Ruiz* (1982), 94 Ill. 2d 245, 447 N.E.2d 148, the supreme court approved the existence of the *Hill* inference, citing language from *People v. Rybka* (1959), 16 Ill. 2d 394, 405, 158 N.E.2d 17, 22, upon which the *Hill* instruction was

framed. However, the court did not pass upon the propriety of instructing the jury concerning the inference.

Although we do not hold the giving of the *Hill* instruction here to be reversible error, for our previously stated reason and for other reasons now apparent, we adhere to our position that ordinarily, the better practice is not to give the *Hill* instruction.

Before further consideration is given to the *Hill* instruction, consideration of the evidence at trial is appropriate. A fair amount of it is undisputed. Defendants, and Lee and Michael Terry who were indicted with them, are all brothers. At least Lee and Michael Terry had become extremely angry at Leroy Carter's cousin, Bay Carter, and decided to kill him. Bay Carter had, apparently, shot Lee in the hand. On the evening of April 12, 1984, the four Terry brothers drove through the north area of Champaign-Urbana in an automobile. At least Lee and Michael had the purpose of finding Bay Carter and killing him. The defendants testified that they went along to try to dissuade the other two brothers from attacking Bay. Most of the evidence upon which the convictions were based came from the testimony of Leroy Carter, who was the victim of the aggravated battery, and Leroy's uncle, Ronald Lindsey, who was allegedly unlawfully restrained.

Leroy Carter testified that on the evening of April 12, 1984, he and Ronald Lindsey were approached by Ray Charles Terry and Lee Terry in the 800 block of North State Street in Champaign. He stated that Lee was armed with a .38-caliber pistol and Ray was holding a .22-caliber pistol. He stated he could not see Ray's gun except for the barrel. Leroy further testified that Lee asked Leroy where Bay Carter lived. Leroy stated that he told Lee he did not know. Leroy stated that Lee then threatened to "blow [his] head off" if Leroy did not tell Lee where Bay lived.

Leroy testified that Ray then asked Leroy and Ronald if they would get into a car that was parked around the corner. He stated that Michael Terry then appeared from behind a tree with a shotgun in his hands and ordered Leroy and Ronald to get into the car that was parked around the corner. Leroy stated that he sat between Kenneth Terry, who was driving, and Ray Charles Terry in the front seat, and Ronald sat in the middle of the back seat between Lee and Michael Terry. He stated that while they were in the car, Kenneth Terry exhibited a knife and said he was going to "gut" someone. Leroy stated that Ray aimed a gun at Leroy and Michael aimed a gun at Ronald. He stated that Michael told Leroy and Ronald that they would be "dropped off at the lake," which he interpreted as meaning

they would be killed. Leroy stated that he then told the Terrys that his sister, Lizzie Wade, might know where Bay lived.

The parties agree that the automobile was then driven to Lizzie Wade's apartment, where Ray and Lee Terry and Leroy Carter got out. Leroy testified that Ronald Lindsey and Michael and Kenneth Terry remained in the vehicle. According to Leroy, he walked between Ray and Lee Terry to the front door of the apartment, where he rang the bell, and his sister's husband, Bobby Wade, answered the door. He stated that his sister told them she did not know where Bay lived. He further stated that Lizzie asked Leroy what was wrong, and Leroy asked Lee if he could talk to his sister. He stated that Lee and Ray said yes, but they told him not to make any false moves. He stated that he then ran toward his sister's apartment, and was shot in the right leg. He testified that he did not know who shot him. Leroy testified that bullets were shot at the front door and back door and windows of Lizzie Wade's apartment.

Ronald Lindsey substantially corroborated Leroy's testimony, but he stated that only Lee Terry accompanied Leroy to the door. Ronald also testified that after the gun shots, Michael Terry jumped from the vehicle and fired at the back of Lizzie Wade's apartment with a shotgun, Ray and Kenneth Terry ran from the automobile toward the apartment, and he, Ronald, ran from the scene. Bobby Wade testified that Leroy and Ray Terry came to the door and that Ray had nothing in his hands. Bobby Wade stated that Lee Terry shot Leroy, and Leroy then ran into the apartment, whereupon four or five more shots were fired.

Lizzie Wade also testified that Ray Terry accompanied Leroy to the door and that when they were told that the Wades did not know where Bay Carter lived, Ray and Leroy turned away. She stated that as they walked away from her door, she asked Leroy to come back to talk to her, and a man standing on the sidewalk said he had to talk from the sidewalk. She further testified that when Leroy ran toward her, the man on the sidewalk shot Leroy.

Ray Terry testified that he intended to try to calm Michael and Lee and dissuade them from killing Bay Carter. Ray admitted he was carrying a .22-caliber pistol in his pocket at the time but said he did so in fear of Bay Carter. He admitted that when he was talking to Leroy about where Leroy's sister lived, Michael Terry appeared from the bushes with a shotgun in his hand and told Leroy and Ronald to get into the car. Ray contended that he, Lee Terry and Leroy went to the Wade apartment, and that when Leroy started to run, Lee shot Leroy. Kenneth Terry also asserted that he and Ray went along with

their brothers to dissuade them from their plan to attack and kill Bay Carter. Kenneth's testimony was generally similar to Ray's. Sheila Jackson, a friend of Kenneth's, and Agnes Lindsey, Ronald's sister, also testified to statements by Ray and Kenneth indicating an intention to deter their brothers.

■ The offense of unlawful restraint occurs when, without lawful authority, one knowingly detains another. (Ill. Rev. Stat. 1983, ch. 38, par. 10—3.) As charged here, aggravated battery occurs when one "knowingly without legal justification *** causes bodily harm" (Ill. Rev. Stat. 1983, ch. 38, par. 12—3(a)(1)) while using a deadly weapon (Ill. Rev. Stat. 1983, ch. 38, par. 12—4(b)(1)). A person is accountable for the criminal conduct of another when, with exceptions not applicable here, "[e]ither before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, or abets, *** in the *** commission of the offense." (Ill. Rev. Stat. 1983, ch. 38, par. 5—2(c).) The jury could have found either of the defendants guilty of the unlawful restraint of Ronald Lindsey on the basis that either actually restrained Lindsey or on the basis that either was guilty by accountability for the conduct of their brothers. Their guilt of aggravated battery could only be found on the basis of their accountability for Lee's shooting Leroy Carter.

To prove a defendant guilty on an accountability theory, it was necessary to prove that defendant had an "intent to promote or facilitate" the commission of the particular offense. The jury was told this by IPI Criminal 2d No. 5.03, which was given, and which described the statutory elements of responsibility. The *Hill* inference is complementary to that instruction, because it permits the trier of fact, if persuaded that the defendant attached himself to the group with knowledge of its design, to infer that the particular defendant shared a purpose with the group and thus intended "to promote or facilitate" the commission of that purpose. As the offenses charged here were for the purpose of finding the whereabouts of Bay Carter so that he might be attacked, an intent to further that purpose would indicate an intent to aid the furtherance of the offenses for which defendants have been convicted.

As we have stated, while the *Hill* inference is valid, we believe that too much emphasis is given to the inference if the *Hill* instruction is given. Defendants now make an additional attack on the giving of the *Hill* instruction. Their theory is obtained from the relatively recent decisions in *County Court of Ulster County v. Allen* (1979), 442 U.S. 140, 60 L. Ed. 2d 777, 99 S. Ct. 2213, and *People v. Housby* (1981), 84 Ill. 2d 415, 420 N.E.2d 151, which place a sharper scrutiny

upon the use of permissive presumptions and inferences in proving guilt in criminal cases. After considering *County Court* and its ancestors, the *Housby* court concluded that for a permissive presumption or inference to be consistent with due process, these three elements must be present: (1) There must be a rational basis between the proved fact and the presumed or inferred fact; (2) the presumed or inferred fact must, more likely than not, flow from the proved fact; and (3) the presumption or inference must be supported by corroborative evidence.

Here, the design referred to in the instruction was apparently the plan to kill Bay Carter. There is no question but that defendants attached themselves to their two brothers knowing of their design. Defendants admitted attachment and knowledge but asserted that they did not share the common purpose. They claimed they intended to deter their brothers. The jury could have believed them, although their story is not very convincing. If the jury did believe defendants' testimony, then the jury could logically opt to reject the permissive *Hill* inference. Indeed, the jury could have done so and still found the defendants guilty. The jury could have concluded that defendants did not want to kill Bay Carter but unlawfully detained Ronald Lindsey or intended to and did aid their brothers in (1) detaining Ronald Lindsey; and (2) battering Leroy Carter if he did not cooperate in helping them find where Bay Carter lived.

In any event, there is inherently a rational relationship between a person's attaching himself to a group knowing of its illicit design and that person's sharing of the group's purpose. It is apparent that this would more likely than not occur. Similarly, under the evidence here, it is more likely than not that defendants, who so attached themselves to such a group, shared its purpose. Little evidence other than defendants' self-serving testimony supports their theory of "going along" with their brothers in order to prevent them from killing Bay Carter. Neither of them testified to anything of substance that they did to deter their brothers, and clearly nothing in the testimony of Leroy Carter or Ronald Lindsey so indicated. On the contrary, both were admittedly very actively involved in the detention of Ronald Lindsey and helped create the circumstances where Lee shot Leroy Carter. The substantial evidence of defendants' conduct at the scene of the offenses here fully satisfies the *Housby* requirement for corroborative evidence. Instructing the jury as to the *Hill* inference did not violate the *Housby* due process requirements.

■ Defendants complain that the jury could have believed their story that they "went along" merely to attempt to hold back their

brothers and still applied the inference because of the jury's belief that defendants had knowingly attached themselves to the group. However, the *Hill* instruction does not require the adoption of the inference, it only permits it. The words "may infer" in the instruction are not "cast in the language of command," as was the improper instruction on a permissive presumption in *Francis v. Franklin* (1985), 471 U.S. ____, 85 L. Ed. 2d 344, 105 S. Ct. 1965. The situation where the jury believes the testimony of the accused, that they did not share in the purpose of the group, would be the most likely example of a situation where the jury would logically not apply the inference. We do not consider any confusion in this regard, under the evidence here, to require reversal, but we do think that the possibility of confusion in this respect is an added reason to avoid giving the instruction.

The *Housby* decision concerned the inference of guilt of burglary arising from the recent exclusive possession of stolen property. In response to the decision, IPI Criminal 2d No. 13.21 was adopted. That instruction, together with the note of its drafting committee, states:

"If you find beyond a reasonable doubt that the defendant had exclusive possession of recently stolen property, and that there was no reasonable explanation of his possession, you may infer that the defendant obtained possession of the property by _____.

You never are required to make this inference. It is for the jury to determine whether the inference should be drawn.

Exclusive possession of recently stolen property may be reasonably explained by the facts and circumstances in evidence.

[In considering whether exclusive possession of recently stolen property has been reasonably explained, you are reminded that, in the exercise of constitutional rights, the accused need not take the stand nor produce evidence.]

Committee Note

The Committee recommends that no instruction be given on this subject, either in a theft case or elsewhere. The Committee believes that particular types of evidence should not be singled out, but should be left to the argument of counsel. Instruction 1.03 tells the jury that attorneys may argue reasonable inferences from the evidence.

The Committee realizes, however, that numerous Illinois decisions approve of instructions concerning the inference to be drawn from exclusive possession of recently stolen property. If the trial court determines that an instruction should be given on this matter, the Committee recommends the instruction set

forth above. For the appropriate time to give this instruction examine *People v. Housby* (1981), 84 Ill. 2d 415, 420 N.E.2d 151, 50 Ill. Dec. 834.

The judge should first determine as a matter of law whether the jury could find recent and exclusive possession.

Insert the offense charged in the blank.

Give the last bracketed paragraph only at the request of the defendant." IPI Criminal 2d No. 13.21.

The conclusion of the drafting committee that the *Housby* inference is better left to argument is in complete conformity with our previous declaration that we deem the *Hill* inference is also better left to argument. The general theory of IPI Criminal is that instruction on particular types of evidence should generally not be given. (IPI Criminal 2d No. 3.00.) In conformity with that policy, suggestion is made that no instruction be given concerning flight (IPI Criminal 2d No. 3.03), motive (IPI Criminal 2d No. 3.04), dying declaration (IPI Criminal 2d No. 3.09), circumstances of identification (IPI Criminal 2d No. 3.15), weighing expert testimony (IPI Criminal 2d No. 3.18), or weighing police testimony (IPI Criminal 2d No. 3.19).

It is important to recognize that, under *Hill*, the voluntary attachment of a person to a group bent on illegal acts with knowledge of its design does not, of itself, subject that person to criminal liability for conduct of members of the group. If criminal liability necessarily attached, misdemeanor murder would be an offense. Rather, the voluntary attachment merely creates an inference of a mental state which would indicate the existence of the requisite mental state for accountability. An additional reason the instruction should not be given is that, because of its complexity, the jury may be likely to believe that it refers to more than an inference which may indicate a significant mental state. Notably, the *Housby* instruction contained in IPI has a short paragraph cautioning the jury that it need not make the inference and a short paragraph telling how one of the basic facts for the application of the inference may be refuted. If the *Hill* instruction is to be given, the concerns expressed in *County Court* and *Housby* would be served by the addition of similar language to the *Hill* instruction.

Defendants note that in *County Court*, the instruction concerning a permissive presumption which was given stated that the presumption vanished upon introduction of substantial evidence of the nonexistence of the presumed fact (442 U.S. 140, 161 n.20, 60 L. Ed. 2d 777, 794 n.20, 99 S. Ct. 2213, 2227 n.20). Defendants maintain that due process requires a similar condition be imposed upon use of the

*Hill* inference in order that the jury may understand that the burden of persuasion has not shifted from the State to the defendant. We find nothing in *County Court* which requires this, and, clearly, *Housby* did not impose any such requirement. The *Hill* instruction was not faulty in this respect.

■ Defendants' complaint with the manner in which they were charged arises because they were never directly charged with aggravated battery. Rather, they were indicted for armed violence (Ill. Rev. Stat. 1983, ch. 38, par. 33A—2) based upon aggravated battery. In *People v. Haron* (1981), 85 Ill. 2d 261, 422 N.E.2d 627, the supreme court held that armed violence could not arise from that type of aggravated battery where the use of the deadly weapon had served to enhance the offense from the misdemeanor of battery. To do so would permit the use of the deadly weapon to enhance the offense a second time to armed violence. The parties recognized this at trial and allowed the case to proceed on the basis that defendants would be tried on the included offense of aggravated battery. The commission of aggravated battery was alleged in the armed violence indictment. Regardless of what the situation might be if objection had been made at trial, complaint as to the sufficiency of the charge for the first time on appeal is clearly too late. That cannot be done where, as here, the charge is sufficient to enable the defendant to prepare his defense and plead a resulting conviction as a bar to future prosecution. *People v. Gilmore* (1976), 63 Ill. 2d 23, 344 N.E.2d 456.

■ We do not find the defendants' sentences to be a breach of the trial court's discretion. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.) There was substantial evidence that each was armed. Ray Terry had been adjudged a delinquent as a minor and had an extensive record of minor convictions as an adult. Kenneth Terry had likewise a record of juvenile delinquency and had two traffic convictions as an adult. They could have received a sentence of five years' imprisonment for the aggravated battery, which was a Class 3 felony. Ill. Rev. Stat. 1983, ch. 38, par. 1005—8—1(a)(6).

Thus, despite our concern with the use of the *Hill* instruction, we affirm the convictions and sentences.

Affirmed.

McCULLOUGH and MORTHLAND, JJ., concur.