**People of the State of Illinois, Plaintiff-Appellee, v. Samuel Lacey, Defendant-Appellant.**

**Gen. No. 49,486.**

First District, Second Division.

April 21, 1964.

Philip Rosenstrock and Donald C. Dowling, of Chicago, for appellant.

William G. Clark, Attorney General, of Springfield (Daniel P. Ward, State's Attorney, Fred G. Leach and E. Michael O'Brien, Assistant Attorneys General, Elmer C. Kissane and Matthew J. Moran, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE BRYANT delivered the opinion of the court.

Defendant, Samuel Lacey, was indicted and tried for the crime of rape, was found guilty after a bench trial in the Criminal Court of Cook County, and was sentenced to the penitentiary for a term of 10 years.

The People presented the following proof: The prosecutrix, Katherine Thomas, returning home from church about 10:00 p.m., January 16, 1961, alighted from a bus at the corner of Douglas and Kedzie in the City of Chicago. She proceeded down Kedzie and had just crossed Troy when some boys approached her from behind and one grabbed her behind her neck. The boy who grabbed her said he had a knife at her back and asked her to turn around and walk the other way. She turned around and proceeded down Douglas and across Troy into a gangway and down

into a basement where one of them took her purse. Katherine Thomas testified that all six boys, one of whom was the defendant, had sexual intercourse with her.

After the rape three of the boys took her out of the basement through an alley where she was knocked down, across Kedzie into another gangway, and into an empty building at 15th and Spaulding where she was raped three more times.

The next time she saw the boys was at the 11th Street Station where, she testified, all six boys were present. She identified the six defendants out of a showup. She testified that at that time the defendants Jones, Walker, House, Sanders, Williams and Lacey made statements in her presence corroborating her version of the story.

On cross-examination when the prosecutrix was asked if she had ever seen Samuel Lacey in a police lineup at any time she stated "no" and later "no, not that one." She testified she was not sure whether there were five or six who had accosted her and she was unable to identify no one of the boys until after the first series of rapes had been completed and she had passed out of the basement into the alley. She also testified that while in the basement one of the boys left, she did not know whether he had intercourse with her, and she had asked him not to leave her. The three boys who took her out of the first basement were identified as Jones, House and Williams. At the finish of cross-examination the prosecutrix admitted she was never able to point out Lacey and say he was there. The People then put on a police officer who identified the statements of House, Williams and Jones and these statements were admitted into evidence. By stipulation these statements were admissible only against the defendant making it.

The People rested its case on the above and a motion was made by counsel for the defendants that

Lacey, Sanders and Walker be discharged. The court denied the motion but said "you may reargue it later on." The six defendants were then called to the stand and testified in their own behalf. Jones testified he had had sexual intercourse with the prosecutrix, had taken her purse, had removed three dollars and had given the money to Walker and Lacey. He testified he was with Walker and Lacey on the evening in question. He testified that Lacey left the basement after asking the prosecutrix if she had any money and after receiving a dollar from Jones. Jones said he never saw Lacey again before his appearance in the courtroom.

Robert House testified next. He first saw the prosecutrix in the alley after she had emerged from the basement with Sam Jones. House testified he and Marvin Williams had been in a restaurant at 13th and Troy when Samuel Lacey came in and after asking for a quarter told them that David Townsend and Sam Jones were in a basement on Douglas with a lady.

Marvin Williams testified to substantially the same facts as Robert House. He stated Lacey went home after meeting them in the restaurant.

Samuel Lacey testified that Sam Jones grabbed the prosecutrix and that he and Jones accompanied the lady to the basement. Jones and Lacey went through the purse without finding any money. Lacey asked the prosecutrix if she had any money. She said she had a few dollars. Lacey walked back and told Sam what she said, and Lacey announced to Townsend and Walker that he was leaving. Lacey testified he had no sexual intercourse with the prosecutrix, that he was in her presence for ten minutes and that he could not see whether she was dressed or not when he asked her about the money. When asked why he had asked the prosecutrix if she had any money, he

stated: "Well, that was *one* of the main reasons we grabbed her at first."

Walker testified after the defendant. He verified that Lacey was in the basement and that he left. Walker testified he left soon after the defendant.

■ When the People rested its case, defense counsel moved that the defendant be discharged. The court denied the motion and stated it might be re-argued later on. The defense proceeded to offer evidence on behalf of Samuel Lacey. The defendant charges that at the close of the People's case the trial court had a duty to determine whether the People had carried its burden of proof in making a prima facie case. The People take the position that, as in a civil case, a motion for a directed verdict made at the close of the plaintiff's case is waived when the defendant introduces evidence after the motion has been denied. Our Supreme Court in a case of first impression recently adopted the People's theory in People v. Washington, 23 Ill2d 546, 548, 179 NE2d 635 (1962) stating:

> ". . . We see no reason why a different rule should be applied in criminal cases, and other courts that have considered the matter have reached the same conclusion. E. g., Craig v. State (1957), 236 Ind 434, 140 NE2d 881; People v. Corbisiero (1943), 290 NY 191, 48 NE2d 481; State v. Hickman, 102 Ohio App 78, 141 NE2d 202."

We feel bound by the above recent determination and believe the defendant waived the motion for dismissal by his determination to proceed with evidence. We can see no reason why a different rule should prevail where there are multiple defendants.

■ The People seek to uphold the conviction on the totality of the evidence by pointing out, at the

least, Samuel Lacey was an accessory to the crime of rape. Proof that Lacey had intercourse with Katherine Thomas was not necessary for his conviction of the crime of rape. People v. Mosher, 403 Ill 112, 117, 85 NE2d 658 (1949); People v. Kolep, 29 Ill2d 116, 120, 193 NE2d 753 (1963). Proof of guilt as an accessory before the fact sustains a conviction as a principal. Ill Rev Stats, c 38, § 582 (1959); People v. Ruscitti, 27 Ill2d 545, 547, 190 NE2d 314 (1963). One may aid and abet in the commission of a crime without actively participating in the overt act. People v. Washington, 26 Ill2d 207, 209, 186 NE2d 259 (1962). As the court said in the Washington case (26 Ill2d 207, 209, 186 NE2d 259):

". . . Defendant's close association with Jackson before and after the crime, his conduct of leading the way into the alley and of later chasing the robbery victim, his failure to attempt to assist the victim or to report the event to the authorities, and the fact he was apprehended with Jackson in the stolen car all tend with reason to justify a conclusion that defendant was joined with Jackson in a common purpose of committing the robbery."

Here, instead of snatching the prosecutrix' purse, the defendant along with Jones forced her to go with them down the street, through a gangway, and into a darkened basement. The defendant himself testified when asked why he asked about the money: "Well, that was *one* of the main reasons we grabbed her at first." We are unable to reasonably conclude the defendants had any other purpose in taking the prosecutrix into a basement darkened and equipped with a cot than for the purposes of rape. Circumstances show there was a common design to commit a rape to which the acts of defendant showed assent, whatever is done in furtherance of the design is the act of all, making each person guilty of the crime. People v.

306

Rybka, 16 Ill2d 394, 404–407, 158 NE2d 17 (1959); People v. Marx, 291 Ill 40, 48, 125 NE 719 (1920); People v. Kolep (supra).

■ ■ Defendant contends his actions in leaving the basement constituted an effective withdrawal from the common design. A person who encourages the commission of an unlawful act cannot escape responsibility by quietly withdrawing from the scene. People v. Marx (supra at 48). Here, Lacey told Jones he was leaving and just walked out. He then proceeded to a restaurant, where in the course of conversation he told two other boys what was happening back in the basement. Far from withdrawing from the rape his conduct indirectly sent two more rapists to the scene.

To be timely a withdrawal must be such as to give his coconspirators a reasonable opportunity, if they desire, to follow his example and refrain from further action before the act is committed, and it must be possible for the trier of fact to say that the accused had wholly and effectively detached himself from the criminal enterprise before the act with which he is charged is in the process of consummation or has become so inevitable that it cannot reasonably be stayed. People v. Brown, 26 Ill2d 308, 312, 313, 186 NE2d 321 (1962). In order to constitute an effective withdrawal some kind of disapproval or opposition must be shown to the activities which the defendant knew had either preceded or were about to proceed. People v. Marx (supra at 48). No such disapproval appears here at all.

We believe there was no effective timely withdrawal and there is sufficient evidence in the record to support the conviction beyond a reasonable doubt. The judgment is affirmed.

Judgment affirmed.

BURKE, P. J. and FRIEND, J., concur.