THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMES GILBERT, Defendant-Appellant.

First District (6th Division)   No. 1—87—0982

Opinion filed January 26, 1990.

---

*Justice R. Eugene Pincham participated in this case prior to his resignation. Since that time Justice Francis S. Lorenz was designated the third member of the panel and has read the record and briefs and has listened to the oral argument tape.

Randolph N. Stone, Public Defender, of Chicago (Barabara J. McClure and James H. Reddy, Assistant Public Defenders, of counsel), for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund and Linda Woloshin, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McNAMARA delivered the opinion of the court:

Defendant, James Gilbert, was jointly indicted with codefendants, Kenneth Thompson and Davey Luster, for murder and armed robbery. Defendant's trial was severed from his co-defendants'. After a jury returned a guilty verdict of armed robbery against defendant, the trial court entered judgment on the verdict and sentenced defendant to 20 years' imprisonment. Defendant appeals, contending that he was not proved accountable for armed robbery beyond a reasonable doubt; that the trial court erred in denying his motion to have his codefendants barred from the courtroom during his testimony; that the trial court erred in permitting the prosecutor to misstate the law regarding accountability; that the trial court improperly considered the victim's death when imposing sentence; and that the evidence obtained as a result of defendant's initial stop should have been suppressed because the police officers lacked any specific information justifying their action.

The following facts were adduced at trial. Juan Garcia testified that on October 8, 1985, he was walking at 50th and Ashland, across the street from a laundromat. He observed Luster and Thompson in the laundromat. Luster was holding Clayton Wilbourne, and Thompson was pointing a gun at Wilbourne's head. Wilbourne appeared to struggle, and Thompson shot him. Luster then went through Wilbourne's pockets, and he and Thompson left the laundromat, walking toward Marshfield. The men went to the alley, where they were joined by defendant. At a lineup conducted later that evening, Garcia identified Thompson and Luster.

Gayle Jeropke testified that as she stepped out of a car at 50th and Ashland, two men passed her as they headed down the street toward Marshfield. As she approached the alley, a third man, whom she identified as defendant, emerged from the alley and bumped into her. Jeropke continued walking until she reached the corner. She then returned and saw defendant and the two other men talking.

Jeropke entered a tavern on the corner and asked for Wilbourne.

She was informed that he was at the laundromat closing up. She went to the laundromat, where she found Wilbourne lying on the floor in a pool of blood. (It was stipulated that Wilbourne died of a gunshot wound.) Jeropke returned to the tavern and told the patrons to call the police. She then returned to the laundromat. Jeropke told the police about the two men who had passed her and the third man who came out of the alley and bumped into her. She gave them a description of defendant.

Officer Thomas Glynn testified that at 8 p.m., he was alerted over his radio that three men had just fled from a shooting at 50th and Ashland. The caller provided a description of one of the men as a black male, with short hair, 5 feet 9 inches tall, 160 pounds, and wearing a black jacket. Glynn patrolled the area and noticed three men, defendant and his codefendants, crossing the street at 51st and Wood. Glynn and his partner drew their weapons and ordered the men to stop. They searched the three men, but recovered nothing linking them to the laundromat incident.

The officers placed the three men into a squadrol and brought them to the laundromat. The men were taken out of the squadrol, and Jeropke identified them. Later that evening, Jeropke viewed a seven-man lineup conducted by Detective Thomas Ptak. She identified all three men again. At that time, she told the detectives that defendant was not wearing the same coat he had been wearing on the street. She informed the detectives that the offender sitting next to him was wearing the coat.

Following the lineups, Ptak read defendant his rights and told him that he had been identified. Ptak asked defendant about the coat, and defendant stated that he and Luster had changed coats in the squadrol because he did not want to be identified. Defendant stated that he and his codefendants had planned a robbery earlier in the day. He said they had walked down Ashland and arrived at the laundromat store front. Defendant watched codefendants walk into the laundromat. He continued to the back of the laundromat and remained in the alley. After a few minutes, he heard a gunshot. He then walked out of the alley, and as he reached the alley mouth, Thompson walked by and said, "I just killed someone." The three men then fled westbound on 50th Street. Ptak did not take any notes during this conversation with defendant.

Assistant States' Attorney Michael Gerber spoke with defendant at Area 3 Headquarters. Following that conversation, he called for a court reporter and took a statement. In that statement, defendant repeated what he had told Officer Ptak.

At the close of the State's case, defense counsel expressed defendant's reluctance to testify in the presence of codefendants. Defendant then rested without testifying.

Defendant first contends that his actions prior to and during codefendants' armed robbery and murder of Wilbourne did not constitute aiding and abetting and, therefore, that he improperly was found guilty of armed robbery on an accountability theory. Defendant argues that his presence outside the laundromat and his subsequent flight from the scene after hearing shots are not sufficient factors to make him accountable for the crimes carried out inside the laundromat by codefendants.

■■ When a defendant has solicited, aided, abetted or agreed or attempted to aid another in the planning or commission of an offense with the intent to promote or to facilitate the commission of the offense, he is legally accountable for the conduct of another. (Ill. Rev. Stat. 1985, ch. 38, par. 5—2(c).) However, presence at the scene of a crime coupled with subsequent flight, without more, does not establish accountability. (*People v. Lopez* (1979), 72 Ill. App. 3d 713, 391 N.E.2d 105.) Nonetheless, one may aid and abet without actively participating in the overt act. (*People v. Johnson* (1966), 35 Ill. 2d 624, 221 N.E.2d 662; *People v. Ray* (1979), 80 Ill. App. 3d 151, 399 N.E.2d 977.) That is, evidence that an individual was present at the scene of a crime without disapproving or opposing it can be considered together with other circumstances in determining whether that individual should be held accountable. *People v. Underwood* (1982), 108 Ill. App. 3d 846, 439 N.E.2d 1080; *People v. Torres* (1981), 100 Ill. App. 3d 931, 427 N.E.2d 329.

■ We believe that the evidence here was sufficient to prove defendant guilty of robbery under an accountability theory. In a statement taken before a court reporter, defendant told the assistant State's Attorney that the three men planned the robbery of the laundromat that afternoon at an apartment. Defendant's statements demonstrate his participation in planning the robbery. Furthermore, his presence with his codefendants at the scene and his flight with them after the incident demonstrate his acquiescence in the execution of the robbery. Finally, defendant not only fled with his codefendants, but also changed jackets with one codefendant to avoid detection. Whether an individual has specific intent to aid or abet a crime for purposes of imposing liability under an accountability theory is a question of fact for the jury. (*People v. Kelly* (1976), 39 Ill. App. 3d 988, 351 N.E.2d 419.) Here, the jury reasonably could have found that defendant aided and abetted in the planning or commission of

the robbery; that this participation took place before the commission of the robbery; and that defendant had concurrent specific intent to promote or facilitate the robbery. See *People v. Jones* (1973), 12 Ill. App. 3d 643, 299 N.E.2d 77.

Defendant next urges this court to find that even if he did specifically plan the robbery, he nonetheless withdrew from the commission of the offense. Defendant argues that his separation from his codefendants is evidenced by the fact that he went into the alley and did not continue on to the laundromat with codefendants.

■ In order to effectively withdraw from a criminal enterprise, a defendant must communicate his intent to withdraw, and not merely withdraw. (*People v. Rybka* (1959), 16 Ill. 2d 394, 158 N.E.2d 17; Ill. Rev. Stat. 1985, ch. 38, par. 5—2(c)(3).) Moreover, the withdrawal must be timely, so as to give the coconspirators a reasonable opportunity to follow the example and to refrain from further action before the act is committed. (*People v. Rybka*, 16 Ill. 2d 394, 158 N.E.2d 17.) The trier of fact must be able to find that the accused wholly and effectively detached himself from the criminal enterprise before the crime is in the process of consummation or has become so inevitable that it cannot reasonably be stayed. *People v. Rybka*, 16 Ill. 2d 394, 158 N.E.2d 17; Ill. Rev. Stat. 1985, ch. 38, par. 5—2(c)(3).

■ Here, defendant did not effectively detach himself from the criminal enterprise. Defendant accompanied his codefendants to the scene of the crime and separated from them only moments before the crime. Defendant proceeded into the alley behind the laundromat, leaving only when his two codefendants exited the laundromat. He then fled with them, and when the three men were arrested, he changed jackets with one of his codefendants to avoid detection. (See *People v. Ruiz* (1982), 94 Ill. 2d 245, 447 N.E.2d 148 (evidence of events occurring after the crime has been committed is competent to show participation in the crime itself).) The jury reasonably could have concluded that defendant's action did not neutralize the effect of his prior conduct, and, accordingly, we will not disturb this conclusion.

Defendant also contends that the trial court erred in denying his request to have his codefendants barred from the courtroom during his testimony. Defendant maintains that this error denied him the right to testify at his trial.

■ A defendant's right to testify at his own trial is fundamental. (*People v. Dredge* (1986), 148 Ill. App. 3d 911, 500 N.E.2d 445.) Our review of the record, however, reveals that defendant was not denied the right to testify, but rather, that he chose not to testify. Defense

counsel indicated that defendant was reluctant to testify in front of the other two defendants, but did not move to exclude them from the courtroom. When asked whether defendant would testify, defense counsel unequivocally responded that he would not. At no time did he request a ruling from the trial court on the subject of the codefendants' presence in the courtroom, and, accordingly, no such ruling issued. Thus defendant has failed to show that he was denied the right to testify.

■ Defendant next contends that certain statements made by the prosecutor during closing argument constituted reversible error. During closing argument, the prosecutor remarked that in order for the defense of withdrawal to apply, the defendant must not only terminate participation in the plan, but also must "do an affirmative action." Defendant argues that this comment amounts to a misstatement of the law of accountability.

As noted previously, a person is not accountable if, prior to the commission of the offense, he terminates his effort to promote or facilitate such commission, and then does one of the following: wholly deprives his prior efforts of effectiveness in such commission, or gives timely warning to the proper law enforcement authorities, or otherwise makes proper effort to prevent the commission of the offense. Ill. Rev. Stat. 1985, ch. 38, par. 5—2(c)(3).

The plain language employed in the statute mandates that the defendant first terminate his participation in the crime and then *do* one of three things. Judicial construction of the statute is consistent with this interpretation. (See, *e.g., People v. Richard* (1980), 90 Ill. App. 3d 322, 413 N.E.2d 5.) Thus, in our view, the prosecutor did not misstate the law of accountability when he indicated that defendant had to both terminate participation in the criminal enterprise and perform some affirmative action which neutralized his prior conduct.

Defendant further urges that the prosecutor's explanation of accountability caused the jury to believe that the only way defendant could have deprived his prior efforts of their effectiveness was by warning the victim. Our review of the record, however, reveals that the prosecutor couched his argument in terms of alternatives and not absolutes. The comments were well within the parameters of permissible closing argument and did not misstate the law of accountability.

The last comment about which defendant complains is as follows:

"[Defense counsel] said that at 6:00 p.m. on October 8th, 1985 in the basement on Wood Street, James Gilbert sat with Kenneth Thompson and Davey Luster and planned the armed robbery of the laundromat at 50th and Ashland. At that time

James Gilbert had committed a conspiracy to commit armed robbery."

Defendant contends that this comment was equivalent to pronouncing him guilty of armed robbery by accountability. Although it is true that the prosecutor may not state his own individual opinion or belief of the defendant's guilt (*People v. Fuerback* (1966), 66 Ill. App. 2d 452, 214 N.E.2d 330), we do not believe that the complained-of statement represented the prosecutor's personal opinion as to defendant's guilt. Rather, the statement merely was made in the context of argument regarding the evidence presented at trial.

Moreover, the jury was properly instructed on the law of accountability. The jury also was instructed to follow all of the instructions and was informed that closing arguments were not evidence. The jury's obligation to follow the trial court's instructions was clear. Thus, even if any of the remarks of the prosecutor exceeded the bounds of proper comment, we still would not disturb the judgment because defendant has failed to show that the remarks resulted in substantial prejudice. (See *People v. Baptist* (1979), 76 Ill. 2d 19, 389 N.E.2d 1200.) As noted previously, defendant failed to establish that he had taken any action which reasonably could be construed as withdrawal from the criminal enterprise.

■ Defendant next contends that the trial court improperly considered Wilbourne's death in sentencing him.

Defendant was convicted of armed robbery, a Class X felony. (Ill. Rev. Stat. 1985, ch. 38, par. 18—2.) A defendant convicted of a Class X felony permissibly may be sentenced to no less than 6 years and not more than 30 years. (Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—1(3).) Thus, defendant's sentence falls well within the permissible range. Defendant nonetheless contends that the sentencing hearing improperly focused primarily on the 76-year-old laundromat worker's death.

In sentencing a defendant, a judge may not consider the fact that the victim died as a result of the offense, where the jury acquitted the defendant of the murder charge. (*People v. Gant* (1974), 18 Ill. App. 3d 61, 309 N.E.2d 265.) There is no indication here, however, that the sentencing judge was influenced in any way by the acquitted offense. The court never commented on Wilbourne's death. Moreover, the prosecutor's argument did not focus on the death. The prosecutor merely referred to the fact that the victim of the armed robbery died. This comment did not unduly direct the sentencing judge's attention to Wilbourne's death. Accordingly, we will not disturb the sentence imposed upon defendant.

Defendant lastly contends that the arresting officers did not have sufficient information to justify the original stop of defendant and co-defendants and that the court erred in denying his motion to suppress. Defendant notes that the officers had only a description of three male blacks and a physical description matching one of the three.

A police officer's conduct in a stop-and-search situation must be governed by a standard of reasonableness. A stop must be justified by specific and articulable facts which, taken together with rational inferences from these facts, reasonably warrant the intrusion. (*Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868; *People v. Byrd* (1977), 47 Ill. App. 3d 804, 365 N.E.2d 443.) Here, the officers had specific and articulable facts from which they legitimately could have concluded that the three men may have been the perpetrators of the crime at the laundromat.

Officer Glynn testified that at about 7:52 p.m., he received a radio message indicating that a shooting had occurred at 50th and Ashland. A second radio message described three male blacks, one of whom was 5 feet 9 inches, 160 pounds, having short hair and dark skin, and wearing a black jacket. The message also gave the direction of flight as westbound on 50th Street. Glynn and his partner observed three male blacks at 51st and Wood. The three men were the only people on the street. One of the men was tall, with short hair and dark skin and was wearing a black jacket. They were approximately three blocks from the scene of the shooting. Twenty to thirty minutes had elapsed from the time of the first radio call.

Glynn testified further that when he and his partner emerged from their squad car to stop the three men, Thompson made a move to run, stopping only when the officers drew their weapons. As the officers searched him, Thompson swung at Glynn. The men then were told that they were being returned to the scene and that if they were not identified, they would be brought back to 51st Street.

In our judgment, Glynn and his partner had ample facts from which they could conclude that defendant and the codefendants may have committed the crime. The men were stopped in the vicinity of the crime, within a short time after the crime occurred. Moreover, the three men fit the general description given by the witnesses to the crime, and one of the men specifically fit the description given by Jeropke. Finally, when the officers approached the three men, one began to run. (See *People v. Addison* (1977), 56 Ill. App. 3d 92, 371 N.E.2d 1025 (flight in the face of officers approaching under the *Terry* rule may supply the additional matter needed to constitute

probable cause).) We find that the officers had specific facts and circumstances from which the officers reasonably could suspect that the group might be the one which had committed the crime. (See *People v. Garza* (1976), 44 Ill. App. 3d 30, 357 N.E.2d 1264.) Accordingly, the initial stop of defendant and codefendants was proper and the evidence obtained as a result of the stop was properly admitted.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

LaPORTA, P.J., and EGAN, J., concur.