Rockingham
No. 2005-493

THE STATE OF NEW HAMPSHIRE

v.

JOHN REED STEWART d/b/a J.R.S. INTERIORS

Argued: November 8, 2006
Opinion Issued: April 17, 2007

*Kelly A. Ayotte*, attorney general (*Nicholas Cort*, assistant attorney general, on the brief and orally), for the State.

*Theodore Lothstein*, assistant appellate defender, of Concord, on the brief and orally, for the defendant.

HICKS, J. The defendant, John Reed Stewart d/b/a J.R.S. Interiors, appeals his conviction, following a jury trial in Superior Court (*Nadeau*, J.), on a felony count of issuing a bad check. *See* RSA 638:4, I, IV(a)(1) (1996). We reverse and remand.

The jury could have found the following facts. In October 2001, the defendant hired Auger Building Company to complete an extensive renovation of his house, for a total cost of around one million dollars. The contract called for certain payments to be made as certain portions of the job were finished. In November 2002, the defendant executed and delivered to Ben Auger, the owner of Auger Building Company, two checks in the amount of $25,000 each. One check was dated November 14, 2002, and the other was dated November 20, 2002.

Auger did not deposit the checks immediately, although that was not his usual practice. Rather, he waited because the defendant informed him at the time the checks were delivered that there were insufficient funds in the account to cash them right away. Auger testified that the checks "or at least one of them was given to us and [the defendant] said, you know, it will be good next week or something like that." He also testified that he contacted the defendant ten or twelve times regarding the checks and was told at least once by the defendant that "they'll be good; I'm waiting for a transfer."

Auger finally deposited the checks on March 5, 2003. The checks were returned, as there were insufficient funds in the defendant's bank account. The testimony at trial also demonstrated that there were insufficient funds in the account at the time the checks were written.

The defendant testified to the following: He wrote the checks on November 13 or 14 because he was leaving the country. He told Auger that the "checks would be good after a mortgage had gone through while [he] was going to be away." He had hired an attorney, who held a power of attorney, to represent him at the closing, and the proceeds of the mortgage loan were to be deposited into the account on which the checks had been written. According to the defendant, the mutual understanding of all involved was that the attorney would call the defendant's assistant, who would then call Auger to "let him know when he could cash the checks."

The defendant further testified that while he was away, he learned that his financing had fallen through. Upon his return, he informed Auger that he would apply for another mortgage "and that [he] would like the checks back because they were no good." According to the defendant, Auger said he would keep the checks. The defendant testified that he did apply for other funding, but was denied.

The jury returned a verdict of not guilty with respect to the check dated November 20, but guilty with respect to the check dated November 14. The defendant appeals, arguing that the trial court erred in responding to a jury question and in denying his motion to dismiss for insufficient evidence.

■ The defendant first argues that the trial court misstated the law in response to a jury question. "The response to a jury question is left to the sound discretion of the trial court." *State v. Poole*, 150 N.H. 299, 301 (2003) (quotation omitted). Accordingly, we review the court's response under the unsustainable exercise of discretion standard. *See id.* "We review the trial court's answer to a jury inquiry in the context of the court's entire charge to determine whether the answer accurately conveys the law on the question and whether the charge as a whole fairly covered the issues and law in the case." *State v. Fitanides*, 141 N.H. 352, 354 (1996) (citation omitted).

The trial court instructed the jury on the elements of the crime as follows:

> [T]he State must prove the following beyond a reasonable doubt. Number one, that the defendant issued a check for the payment of money. Number two, that the payment was refused by the bank on which the check was drawn. Number three, that the defendant knew or believed that the check would not be paid by the bank. Number four, that the face amount of the check exceeded $1,000.00. And number five, that the defendant acted knowingly.

On the first day of deliberations, the jury asked the following questions:

(1) is the verbal agreement between defendant + plaintiff legal + binding

(2) Clarify "at that time"—what period of time? That moment the check was written?

(3) please define criminal intent

The court answered that the first question was not relevant and thus could not be answered. With respect to the second and third questions, the court referred the jury to the original instructions, but in addition, in response to the second question, stated: "The State must prove that, at the time the defendant issued the check, he knew or believed that the check would not be paid by the bank and that there were insufficient funds to cover the check."

The jury asked for further clarification:

Does this statement mean that [the defendant] believed on November 14th that the check would not be paid by the bank. (Eventually, possibly after his refinance)

-or-

That [the defendant] believed that the check would not be paid by the bank on November 14th when he knew the funds were not in the account.

The trial court gave the following answer:

The State does not have the burden to prove the defendant never intended to pay the amount owed.

Rather, the State has the burden to prove beyond a reasonable doubt that at the time the defendant issued the check to Mr. Auger, the defendant knew there were insufficient funds to cover the check, and that the bank would not honor the check.

The defendant contends, "The jury's questions revealed it was grappling with the very heart of the matter"; particularly, "whether [the defendant's] knowledge that the funds were insufficient on the day that he actually wrote the check made him guilty regardless of his good faith belief that Auger would hold the check until the mortgage refinance went through." He argues that "the trial court erred in directing the jury to consider [his] belief as to his account balance on the date of the check." We agree.

■ The bad check statute provides, in part:

I. A person is guilty of issuing a bad check if he issues or passes a check for the payment of money and payment is refused by the drawee, except in cases where a legal stop payment order has been issued or where the drawee refuses payment for any other reason through no fault of the person who issued or passed the check.

RSA 638:4, I. The prosecutor is required to "prove that the person issued or passed the check knowing or believing that the check would not be paid by the drawee." RSA 638:4, IV(b). The plain language of this subsection focuses on the defendant's belief as to the eventuality of the check being honored, not on the defendant's knowledge of his account balance at the time of writing the check. We therefore conclude that knowledge of insufficient funds at the time of issue is neither a legal presumption, *cf.* RSA 638:4, II (person is presumed to know check would not be paid if he had no account with drawee at time of issue), nor an element of the crime.

The State argues that this interpretation of RSA 638:4 runs contrary to our holding in *Fitanides*. We disagree. *Fitanides* involved a question from a jury in a bad check case as to whether they "could consider the defendant's intent *ever* to pay [the payee of the check] the amount owed." *Fitanides*, 141 N.H. at 354.

We affirmed the trial court's answer to the jury in the negative, stating:

The culpable mental state that the State is required to prove is that the defendant "passed the check knowing or believing that the check would not be paid by the drawee [bank]." RSA 638:4, IV(b). The State need not prove that the defendant *never* intended to pay the amount owed.

*Id.*

■ *Fitanides* clarifies that the defendant's *intent ever* to make good on the check, or *ever* to pay the underlying obligation, are not relevant issues under RSA 638:4. Rather, it is the defendant's knowledge or belief as to whether the check will clear at the time it is presented to the bank by the payee that constitutes the mental state of the crime. A person may know or believe that a check will not clear at the time it will likely be presented to the bank by the payee, yet have every intention of paying the underlying obligation when or if the person has the means to do so. Under RSA 638:4, that person has committed the crime of issuing a bad check despite his good intentions.

Accordingly, the first portion of the trial court's answer, that "[t]he State does not have the burden to prove the defendant never intended to pay the amount owed," was correct, and our decision today is not

inconsistent with *Fitanides*. The second portion, however, added an element to the crime that does not exist, and in so doing, may have misled the jury. The court stated that the State had to prove that "at the time [he] issued the check to Mr. Auger, [he] knew there were insufficient funds to cover the check." As explained above, that is not an element under RSA 638:4. Although the final portion of the answer referred to the correct object of the defendant's knowledge or belief, namely "that the bank would not honor the check," we conclude that by erroneously informing the jury that the defendant's knowledge of an insufficient account balance on the date the check was issued was a necessary element of the crime, the court's answer could have misled the jury into thinking such knowledge was sufficient to meet the *mens rea* requirement for the crime. *Cf. State v. King*, 136 N.H. 674, 678 (1993) (reversing where court's reinstruction following jury question "improperly focused the jury's attention on whether the victim had been stabbed with a knife and away from the defendant's claim that there had been no assault").

■ We note that knowledge of insufficient funds is evidence of knowledge or a belief that a check will be dishonored, *cf.* RSA 638:4, VI(a) (relating to admissibility of evidence of account balance on date check was issued), and as checks are often issued, delivered and negotiated in a short period of time, such knowledge will often be compelling evidence of the criminal *mens rea*. Thus, in many cases, a jury may find that the *mens rea* element is satisfied solely by the State's evidence of insufficient funds at the time the check was issued. In a case such as this, however, where there was evidence of an agreement not to deposit the checks immediately, evidence of attempts to obtain financing prior to negotiation of the checks, and evidence that the checks were in fact held for approximately four months, the status of the defendant's account at the time the checks were written may be less relevant, and a rational jury could have found that the *mens rea* element was not proved. Accordingly, we conclude that the defendant was prejudiced by the trial court's erroneous response to the jury's question. *Cf. Poole*, 150 N.H. at 302 (concluding, because of way State and defendant tried case, defendant was prejudiced by answer to jury question). The trial court therefore unsustainably exercised its discretion in answering the jury's question. *See State v. Lambert*, 147 N.H. 295, 296 (2001).

The defendant also raises a sufficiency of the evidence claim that we must address on appeal. "To succeed on a sufficiency of the evidence claim, the defendant must show that, viewing the evidence in the light most favorable to the State, no rational trier of fact could have found guilt beyond a reasonable doubt." *State v. Grimes*, 152 N.H. 310, 311 (2005).

The defendant argues that the State failed to prove "a criminally culpable *mens rea*." His sufficiency of the evidence claim, however, hinges upon his interpretation of the statute. Specifically, he contends that the trial court should have granted his motion to dismiss for insufficient evidence, which asserted:

> [A]s a matter of law, when a payee knows at the time of issuance that the check is not supported by sufficient funds, and the payee holds the check in accordance with the issuer's instructions to wait until notified that sufficient funds have become available, the offense of issuing [a] bad check is not committed.

As the defendant acknowledges, however, the cases so holding are from jurisdictions in which the bad check statute requires an intent to defraud. As the Supreme Court of California noted:

> Statutes imposing criminal penalties on those who knowingly pass checks with insufficient funds on deposit in or credit with the bank on which they are drawn are of two general types: those which do not require an intent to defraud and those which do. . . . While disclosure of present insufficiency of funds is not generally regarded as a defense to statutes not requiring intent to defraud, such disclosure is a defense where fraud is an element.

*People v. Poyet*, 492 P.2d 1150, 1151-52 (Cal. 1972) (citation omitted).

In matters of statutory interpretation, we are "the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole." *State v. Leonard*, 151 N.H. 201, 203 (2004) (quotation omitted). Our "starting point is the language of the statute. We construe each statute as a whole, and if the statute's language is clear and unambiguous, we do not look beyond the language of the statute to discern legislative intent." *Id.* (quotation omitted).

■ Nowhere in the plain language of RSA 638:4 is there a requirement of, or even a reference to, an intent to defraud. *See* RSA 638:4; *accord State v. Kelm*, 672 A.2d 1261, 1262-63 (N.J. Super. Ct. App. Div.) (construing similar statute to not require an intent to defraud), *cert. denied*, 679 A.2d 655 (N.J. 1996). The required mental state is clearly expressed to be "that the person issued or passed the check knowing or believing that the check would not be paid by the drawee." RSA 638:4, IV(b). Knowledge on the part of the payee of an insufficiency of funds and an agreement to hold the check may be evidence tending to weaken, in the evaluation of whether the *mens rea* element is satisfied, the importance of evidence that the defendant knew of an insufficiency of funds at the time

the check was issued, but it does not operate as a matter of law to negate the *mens rea* element of the crime. Thus, we reject the defendant's reading of the statute.

Under the statute as interpreted herein, the evidence at trial was sufficient to support the defendant's conviction. According to the undisputed evidence, the defendant told Auger that at least one of the checks would not be good immediately and Auger held the checks on the basis of that information. The evidence also indicated that the defendant told Auger that the checks would be good in the near future and that he was waiting for "a transfer." Nevertheless, crucial evidence as to the defendant's belief that the checks would be honored was that he had applied for a mortgage loan and that he expected it to go through while he was away. In fact, the defendant testified that he was told "it was definite."

The State argues, however, that the defendant "did not say who told him [the loan was definite]; nor did he produce any documentation to support this statement." A rational jury could have disbelieved the defendant's testimony and found, based upon other evidence, that the defendant knew or believed that the November 14 check would not be paid by the drawee. Thus, we cannot say that "viewing the evidence in the light most favorable to the State, no rational trier of fact could have found guilt beyond a reasonable doubt." *Grimes*, 152 N.H. at 311.

*Reversed and remanded.*

BRODERICK, C.J., and DALIANIS, DUGGAN and GALWAY, JJ., concurred.