Lebanon District Court
No. 2007-866

THE STATE OF NEW HAMPSHIRE

v.

PAUL FORMELLA

Argued: October 22, 2008
Opinion Issued: November 21, 2008

*Kelly A. Ayotte*, attorney general (*Thomas E. Bocian*, attorney, on the brief and orally), for the State.

*Green & Utter, P.A.*, of Manchester (*Philip H. Utter* on the brief and orally), for the defendant.

GALWAY, J. The defendant, Paul Formella, appeals his conviction following a bench trial in the Lebanon District Court (*Cirone*, J.) for criminal liability for the conduct of another. *See* RSA 626:8 (2007). We affirm.

The relevant facts are not in dispute. On the afternoon of Wednesday, June 13, 2007, the defendant, then a junior at Hanover High School, and two friends, were studying at the Howe Library near the school. Wednesdays were typically early release days at the school, and students had been dismissed at 2:00 p.m. After studying for approximately two hours, the defendant and his friends returned to the school to retrieve some books from their second-floor lockers. Upon entering the school, they encountered another group of students who said they intended to steal mathematics exams from the third floor. The defendant and his companions were asked to serve as lookouts during the theft, which they agreed to do. They were instructed to yell something like "did you get your math book?" up to the third floor as a code to alert the thieves if someone was coming.

The defendant and his friends then proceeded to their second-floor lockers. The defendant testified that on their way to their lockers they looked around to "confirm or dispel" whether anyone was there. Once the defendant and his friends had retrieved their books, they "were all feeling like this was the wrong thing to do," and decided to head back down to the first floor to wait for the other group. On their way down the stairs, they encountered some janitors who told them that they ought to leave the school. The defendant and his friends left the school building, but waited in the parking lot for approximately five to ten minutes for the other group. Eventually, the other students exited the school with the stolen examinations and all of the students shared the exam questions.

The next week, someone informed the dean of students that some students had stolen the exams. The police were called, and in connection with their investigation they interviewed the defendant, who admitted his involvement in the theft. He was later charged with criminal liability for conduct of another. *See* RSA 626:8. Following his conviction, the defendant appealed to this court.

On appeal, the defendant raises two interrelated arguments. He first contends that the trial court erred in failing to make findings of fact relative to the timing of his withdrawal from the theft and the completion of the theft because, he argues, without such findings the trial court could not properly apply RSA 626:8. Additionally, he argues that the trial court erred in denying his motion to dismiss at the close of the State's case because the evidence was insufficient to find him guilty beyond a reasonable doubt.

Before addressing the defendant's specific arguments, we must construe RSA 626:8. In matters of statutory interpretation, we are the final arbiters of the legislature's intent as expressed in the words of the statute considered as a whole. *State v. Drake*, 155 N.H. 169, 174 (2007). When examining the language of the statute, we ascribe the plain and ordinary meaning to the words used. *Id.* We construe provisions of the Criminal Code according to the fair import of their terms and to promote justice. *See* RSA 625:3 (2007); *Petition of State of N.H.*, 152 N.H. 185, 187 (2005). In doing so, we must first look to the plain language of the statute to determine legislative intent. *Petition of State of N.H.*, 152 N.H. at 187. Absent an ambiguity we will not look beyond the language of the statute to discern legislative intent. *State v. Stewart*, 155 N.H. 212, 218 (2007).

RSA 626:8 provides, in relevant part, that an individual is criminally liable for the conduct of another when he acts as an accomplice in the commission of an offense. RSA 626:8, II(c). A person is an accomplice when with the purpose of promoting or facilitating the commission of an offense, he aids or agrees or attempts to aid another person in planning or committing the offense. RSA 626:8, III(a). RSA 626:8 further provides, however, that a person is not an accomplice if he "terminates his complicity prior to the commission of the offense and wholly deprives it of effectiveness in the commission of the offense or gives timely warning to the law enforcement authorities or otherwise makes proper effort to prevent the commission of the offense." RSA 626:8, VI(c).

The defendant does not dispute that he became an accomplice in the first instance when he agreed to act as a lookout. *See State v. Merritt*, 143 N.H. 714, 718 (1999) (noting that a defendant's presence at the scene of the crime may be sufficient for accomplice liability if it was intended to, and does, aid the primary actor). Accordingly, we are concerned only with

whether the defendant's later acts terminated his liability as an accomplice. We note that the defendant does not contend that he gave timely warning to law enforcement or otherwise made "proper effort" to prevent the offense. *See* RSA 626:8, VI(c). Thus, under RSA 626:8, VI(c) the defendant was not an accomplice if: (1) he terminated his complicity in the crime; (2) his termination occurred prior to the commission of the offense; and (3) he wholly deprived his complicity of effectiveness in the commission of the offense.

We conclude that the statute is ambiguous. As regards the third factor, for example, the statute does not define what is required for a person to "wholly deprive" his complicity of effectiveness in the commission of an offense. According to the State, an overt act aimed at undermining the prior complicity is required, while the defendant argues that, at least in this case, no such act is necessary. As the statute does not clarify whether such an act is necessary, we conclude that it is ambiguous, and we look to other sources to determine legislative intent.

■ RSA 626:8, like much of our criminal law, is based upon the Model Penal Code. *See* 2 W. LAFAVE, SUBSTANTIVE CRIMINAL LAW § 13.3(d) at 367 n.71 (2d ed. 2003). Accordingly, we look to the Model Penal Code and its commentaries for guidance. *See State v. Donohue*, 150 N.H. 180, 183 (2003). RSA 626:8 tracks the provisions of section 2.06 of the Model Penal Code. Comment 9(c) to section 2.06 addresses situations where liability may be averted if the accomplice's complicity is terminated prior to the commission of the crime. MODEL PENAL CODE § 2.06 cmt. 9(c) at 326 (1985). The comment notes that the actions sufficient to deprive the prior complicity of effectiveness vary with the type of accessorial behavior. *Id.* Relevant to the analysis here, the comment states that if "complicity inhered in request or encouragement, countermanding disapproval may suffice to nullify its influence, providing it is heard in time to allow reconsideration by those planning to commit the crime." *Id.* The comments thus indicate that in order to deprive the prior complicity of effectiveness, one who has encouraged the commission of an offense may avoid liability by terminating his or her role in the commission of the crime *and* by making his or her disapproval known to the principals sufficiently in advance of the commission of the crime to allow them time to reconsider as well.

While there appears to be a paucity of authority on the issue, the view that an accomplice must make some affirmative act, such as an overt expression of disapproval to the principals, accords with that of other jurisdictions with statutes mirroring the provisions of the Model Penal Code. *See People v. Lacey*, 200 N.E.2d 11, 14 (Ill. App. Ct. 1964) ("A person who encourages the commission of an unlawful act cannot escape respon-

sibility by quietly withdrawing from the scene."); *People v. Brown*, 186 N.E.2d 321, 324 (Ill. 1962); *Commonwealth v. Spriggs*, 344 A.2d 880, 883 (Pa. 1975). Additionally, the relevant authorities weigh in favor of requiring any withdrawal to be communicated far enough in advance to allow the others involved in the crime to follow suit. *See Lacey*, 200 N.E.2d at 14 ("[I]t must be possible for the trier of fact to say that the accused had wholly and effectively detached himself from the criminal enterprise before the act with which he is charged is in the process of consummation or has become so inevitable that it cannot reasonably be stayed."); *see also* LAFAVE, *supra* at 366 ("A mere change of heart, flight from the crime scene, apprehension by the police, or an uncommunicated decision not to carry out his part of the scheme will not suffice."). This is not to say that the terminating accomplice must actually prevent the crime from occurring. Instead, he need only make some act demonstrating to the principals of the crime that he has withdrawn, and he must do so in a manner, and at such a time, that the principals could do likewise. We agree with the rationale of these authorities.

With the above understanding, we turn to the defendant's specific claims of error. According to the defendant, the trial court erred in failing to make findings of fact regarding the time the defendant terminated his complicity, and the time the theft occurred because without such findings the trial court could not properly apply the statute. Here, the trial court credited the defendant's claim that he did, in fact, terminate his complicity. Thus, he contends, it was critical to know when he withdrew and when the crime was committed, so that it could be determined whether he withdrew at a time sufficient to satisfy the statute. We disagree.

The relevant portion of the statute is phrased in the conjunctive. For a person not to be an accomplice he must terminate his complicity prior to the commission of the offense *and* wholly deprive that complicity of its effectiveness. *See* RSA 626:8, VI(c). Even assuming the defendant terminated his complicity prior to the commission of the offense, he did not wholly deprive his complicity of its effectiveness.

■ As stated above, to extricate himself from accomplice liability, the defendant needed to make an affirmative act, such as communicating his withdrawal to the principals. Here, the defendant made no such act. The defendant testified that he and his companions simply left the scene. He did not communicate his withdrawal, discourage the principals from acting, inform the custodians, or do any other thing which would deprive his complicity of effectiveness. In fact, the principals remained unaware of his exit. Thus, the defendant did not do that which was necessary to undo his complicity.

The defendant contends that because he had been acting as a lookout, leaving the scene so as to no longer be "looking out" deprived his complicity of its effectiveness, and, therefore, findings regarding the timing of the offense were required. We disagree. While at the point he left the scene he was no longer an effective lookout, the defendant did nothing to counter his prior complicity. According to the defendant, the principals had requested aid in committing the offense, he agreed to provide it, and he agreed to warn the principals if anyone approached, thus encouraging the act. Further, upon reaching the second floor the defendant looked around to "confirm or dispel" whether anyone was around who might have apprehended the thieves or otherwise spoiled the crime. Thus, it was the complicity of agreeing to aid the primary actors and then actually aiding them that needed to be undone; silently withdrawing from the scene did not, in any way, undermine the encouragement the defendant had provided. As there was no evidence that the defendant had wholly deprived his complicity of its effectiveness, it was not error for the trial court to refuse to make findings on the timing of the offense because such findings would not have altered the result.

■ For essentially the same reasons, we reject the defendant's argument that the trial court erred in denying his motion to dismiss for insufficient evidence. To succeed on a motion to dismiss, the defendant bears the burden of establishing that the evidence, viewed in its entirety and with all reasonable inferences drawn in the State's favor, was insufficient to prove beyond a reasonable doubt that he was guilty of the crime charged. *State v. Sideris*, 157 N.H. 258, 263 (2008).

■ The defendant argues that the State did not meet its burden to show that he did not effectively terminate his role in the offense. During trial, the State presented the testimony of Captain Francis Moran of the Hanover Police Department, who testified that the defendant had confessed his involvement in the crime. He then recounted the events as the defendant had described them to him. From this testimony, there was sufficient evidence to find that the defendant was an accomplice in the crime. Moreover, as noted previously, there was no evidence that the defendant had done anything to deprive his complicity in the crime of its effectiveness. Accordingly, we conclude that the evidence was sufficient to deny the defendant's motion to dismiss.

*Affirmed.*

BRODERICK, C.J., and DUGGAN and HICKS, JJ., concurred; DALIANIS, J., concurred specially.

DALIANIS, J., concurring specially. I agree with the majority that the defendant, Paul Formella, did not wholly deprive his complicity of its effectiveness, as that phrase has been interpreted by courts with provisions similar to RSA 626:8, VI(c) (2007), and by the drafters of the Model Penal Code. I write separately because I reach this result by using a slightly different analysis from that of the majority. While the majority focuses upon the ambiguity of the language of RSA 626:8, VI(c), my focus is upon the fact that this provision derives from the Model Penal Code. The court's longstanding practice is to look to the Model Penal Code commentaries for guidance when interpreting analogous New Hampshire statutes. *State v. Donohue*, 150 N.H. 180, 183 (2003). I see no reason to depart from this practice in this case.

The defendant's principal appellate argument is that the evidence was insufficient to find him criminally liable for the conduct of another beyond a reasonable doubt. To prevail upon his challenge to the sufficiency of the evidence, the defendant must prove that no rational trier of fact, viewing all of the evidence and all reasonable inferences from it in the light most favorable to the State, could have found guilt beyond a reasonable doubt. *State v. MacDonald*, 156 N.H. 803, 804 (2008). When the evidence is solely circumstantial, it must exclude all rational conclusions except guilt. *Id.* Under this standard, however, the court still considers the evidence in the light most favorable to the State and examines each evidentiary item in context, not in isolation. *Id.*

RSA 626:8 (2007) provides, in relevant part, that an individual is criminally liable for the conduct of another when he acts as an accomplice in the commission of an offense. RSA 626:8, II(c). A person is an accomplice when "[w]ith the purpose of promoting or facilitating the commission of [an] offense, he . . . aids or agrees or attempts to aid [an]other person in planning or committing" the offense. RSA 626:8, III(a). RSA 626:8, VI(c) further provides, however, that a person is *not* an accomplice if he "terminates his complicity prior to the commission of the offense and wholly deprives it of effectiveness in the commission of the offense or gives timely warning to the law enforcement authorities or otherwise makes proper effort to prevent the commission of the offense."

As the defendant concedes, he became an accomplice when he agreed to act as a lookout. *See State v. Merritt*, 143 N.H. 714, 718 (1999). He argues that the evidence compelled a finding that nonetheless he was immune from liability because he "terminate[d] his complicity prior to the commission of the offense and wholly deprive[d] it of effectiveness in the commission of the offense" when he left his lookout position. RSA 626:8, VI(c). The State counters that merely abandoning his lookout post was insufficient to

terminate his complicity. The State argues that to terminate his complicity, the defendant had to "make some effort to actually prevent the crime from occurring," which he did not do.

Resolving this dispute requires interpretation of RSA 626:8, VI(c). RSA 626:8 is based upon Model Penal Code section 2.06. *See State v. Anthony*, 151 N.H. 492, 494 (2004); MODEL PENAL CODE § 2.06, at 295-96 (Official Draft and Revised Comments 1985). To interpret RSA 626:8, VI(c), therefore, the court looks to the Model Penal Code and its commentaries for guidance. *See Donohue*, 150 N.H. at 183.

RSA 626:8, VI(c) tracks the language of Model Penal Code section 2.06(6)(c). MODEL PENAL CODE § 2.06, at 296. This part of the Model Penal Code "establishes three special defenses to a charge that one is an accomplice. . . . [T]he third [of these defenses] relates to a termination of the actor's complicity prior to the commission of the offense." *Id.* at 298. "Termination requires that the actor wholly deprive his conduct of its effectiveness in the commission of the offense or that he give timely warning to law enforcement authorities or otherwise make a proper effort to prevent the commission of the offense." *Id.*

According to the drafters of the Model Penal Code, the "general principle advanced" in Model Penal Code section 2.06(6)(c) "is that the accomplice must deprive his prior action of its effectiveness." *Id.* cmt. 9(c) at 326. The action that suffices varies with the kind of aid provided. *Id.* For instance, if the accomplice provided arms to the principal, then merely stating that he withdraws from the aid "ought not to be sufficient; what is important is that he get back the arms," thereby wholly depriving his aid of its effectiveness in the commission of the offense. *Id.* By contrast, if the aid given consists of merely encouraging the principal to commit the offense, then "countermanding disapproval" may suffice to nullify the aid's influence, provided it's heard in time to allow those planning to commit the crime to reconsider their actions. *Id.* Because there will be cases in which the only way that an accomplice can deprive his conduct of effectiveness is to actually prevent the crime, the drafters included informing law enforcement as a method of termination. *Id.* As "[t]he sort of effort that should be demanded turns so largely on the circumstances," the drafters thought it inadvisable to formulate a more specific rule, and instead crafted a catch-all that provides immunity where the accomplice "otherwise makes proper effort to prevent the commission of the offense." *Id.* at 296, 326.

Courts interpreting state analogs to Model Penal Code section 2.06 have uniformly held that for termination to be effective, it must, at a minimum, be communicated to the principal. *See People v. Quiroz*, 593 N.E.2d 675, 678 (Ill. App. Ct. 1992). "A mere change of heart, flight from the crime scene, apprehension by the police, or an uncommunicated decision not to carry out

his part of the scheme will not suffice." 2 W. LAFAVE, SUBSTANTIVE CRIMINAL LAW § 13.3(d) at 366 (2d ed. 2003); *see State v. Adams*, 623 A.2d 42, 49 (Conn. 1993). "A person who encourages the commission of an unlawful act cannot escape responsibility by quietly withdrawing from the scene." *People v. Lacey*, 200 N.E.2d 11, 14 (Ill. App. Ct. 1964). "Rather, it is necessary that he: (1) repudiate his prior aid, or (2) do all that is possible to countermand his prior aid or counsel and (3) do so before the chain of events has become unstoppable." LAFAVE, *supra* at 366; *see Adams*, 623 A.2d at 49.

With this understanding of what it means to terminate one's complicity to avoid liability as an accomplice, the next step in my analysis is to examine whether a rational trier of fact, viewing all of the evidence and all reasonable inferences from it in the light most favorable to the State, could have found the defendant criminally liable for the conduct of another.

I agree with the majority that the evidence was sufficient. A rational trier of fact, viewing all of the evidence and the inferences therefrom in the light most favorable to the State, could have found that the defendant did not terminate his complicity when he abandoned his lookout post. To terminate his complicity, the defendant had to wholly deprive his *earlier* aid to the principals of its effectiveness. His earlier assistance enabled the principals to commit the offense without fear of being caught. By merely abandoning his post as a lookout, the defendant did nothing to deprive his earlier assistance of its effectiveness. For all the principals knew, he was still acting as a lookout and they could continue committing the offense without fear of being caught. When he left his post, the defendant did nothing to dispel this belief. Had he done something to dispel this belief, such as announcing to the principals that he was leaving his post, the principals could have had an opportunity to reconsider their actions. Without at least informing them that he was leaving, the defendant did not wholly deprive his earlier assistance to the principals of its effectiveness.

Accordingly, I agree with the majority that the defendant's conviction for criminal liability for the conduct of another must be affirmed.